IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>JOHN CHRISTOPHER GOOD,<br><br>                    Defendant. | **4:18CR3088**<br><br>**FINDINGS & RECOMMENDATION** |

Defendant John Christopher Good is charged with four counts of violating the alien harboring statute, 8 U.S.C. § 1324. (Filing No. 284). Defendant argues each count is barred under the First Amendment and the Due Process Clause of the Fifth Amendment of the United States Constitution.[1] Defendant Good seeks dismissal of all charges against him for failure to state an offense under Fed. R. Crim P. 12(b)(1) & (3) and on grounds that may be asserted under Fed. R. Crim. P. 29.[2] (Filing No. 335, at CM/ECF p. 1).

After reviewing the parties' extensive briefing and the allegations within the superseding indictment, (Filing No. 284), for the reasons stated below, the motion to dismiss should be denied in its entirely.

---

[1] Good's briefing alludes to seeking dismissal based on selective prosecution, but he presents no threshold evidence or substantive argument to address this claim. (Filing No. 338, at CM/ECF p. 43). A hearing is therefore unnecessary and this vague reference in his brief will not be further addressed. United States v. Aanerud, 893 F.2d 956 (8th Cir. 1990).

[2] Fed. R. Crim P. 29(c) permits a court to "set aside the verdict and enter an acquittal" in cases where the jury has returned a guilty verdict or "failed to return a verdict" and where "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt." United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000).

Since Rule 29 cannot be invoked or considered by the court at this stage of the case, dismissal under Rule 29 will not be addressed in this opinion.

## CONTENTS

STANDARD OF REVIEW ................................................................................................................ 3

FACTUAL STATEMENT .............................................................................................................. 4

SUMMARY OF FINDINGS ........................................................................................................ 8

LEGAL ANALYSIS................................................................................................................... 11

    I.     CONSTITUTIONALITY OF 8 U.S.C. § 1324(A)(1)(A)(III) AND (V)(I) AS APPLIED TO DEFENDANT. .....................11

        A.    *First Amendment Challenge.* ......................................................................................11

            i.    Speech...................................................................................................................11

            ii.    Association. .............................................................................................. 16

           iii.    Free Exercise of Religion. ........................................................................... 17

        B.    *Fifth Amendment Guarantee of Due Process of Law.* ............................................21

            i.    Vagueness. ............................................................................................. 21

            ii.    Notice of what constitutes criminal conduct. ..................................................... 24

    II.    FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF 8 U.S.C. § 1324. ...........................................25

        A.    *First Amendment Overbreadth challenge.* ...........................................................25

            i.    Standing. ................................................................................................ 25

            ii.    Overbreadth. .......................................................................................... 26

    III.    FAILURE TO STATE AN OFFENSE ...............................................................................................29

        A.    *12(b) argument for dismissal on all counts.* .........................................................29

        B.    *12(b) argument for failure to plead specificity as to Count II.* ..............................30

        C.    *12(b) Argument for dismissal of conspiracy charges.* ..........................................31

CONCLUSION ....................................................................................................................**32**

STANDARD OF REVIEW

In general, "[a]n indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal to bar a subsequent prosecution." United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993). "In determining whether an Indictment has sufficiently set forth the elements of the charge, the Indictment will generally be deemed sufficient 'unless no reasonable construction can be said to charge the offense.'" United States v. Hughson, 488 F. Supp. 2d 835, 840-41 (D. Minn. 2007)(quoting United States v. Peterson, 867 F.2d 1110, 1114 (8th Cir. 1989)).  "An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994).[3]

However, even where the indictment alleges all the essential elements of a federal crime, a defendant may move to dismiss based on "any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b). Here, Good moves to dismiss on constitutional grounds, arguing the harboring and conspiracy subsections of 8 U.S.C. § 1324 as applied to Good[4] are void for vagueness, fail to provide adequate notice, and violate Good's First Amendment rights. (Filing No. 338). Good also argues 8 U.S.C. § 1324 is overbroad and unconstitutional on its face. Finally, Good argues applying Rule

---

[3] The parties' briefing argues the underlying facts that will be offered at trial. On this motion to dismiss, the court will consider only the allegations within the indictment itself. A motion to dismiss is not valid means for challenging the competency and adequacy of the evidence presented before the grand jury. Costello v. U.S., 350 U.S. 359, 363 (1956).

[4] See 8 U.S.C. §§ 1324(a)(1)(A)(iii) & (v)(I).

3

12(b), all counts must be dismissed as unconstitutional, Count I must be dismissed because under Good's interpretation of the statute and superseding indictment, Good had no co-conspirators, and Count II must be dismissed for lack of specificity.

## FACTUAL STATEMENT

On November 15, 2018, a grand jury returned a superseding indictment charging Good with one count of violating 8 U.S.C. § 1324(a)(1)(A)(v)(I) by conspiring to harbor and conceal aliens to reside in the country in knowing and reckless disregard that the aliens were not lawfully in the United States; two counts of violating 8 U.S.C. § 1324(a)(1)(A)(iii) for substantive violations of the same offense; and, one count of violating 18 U.S.C. § 1956(h) and Section 2 for conspiring to commit money laundering.

Specifically, as to Defendant Good, the superseding indictment on its face alleges as follows:

### COUNT I- Conspiracy to Harbor Aliens[5]

JOHN C. GOOD, a United States citizen, would allow JUAN PABLO SANCHEZ DELGADO and MAGDALENA CASTRO BENITEZ, to conceal commercial assets and businesses in his name, to include "La Herradura," a restaurant in O'Neill, Nebraska, that is operated and staffed by JUAN PABLO SANCHEZ DELGADO, and which MAGDALENA CASTRO BENITEZ, assisted in managing and operating. JOHN GOOD also provided a residence to harbor JUAN PABLO SANCHEZ DELGADO, for the purpose of concealing JUAN PABLO SANCHEZ DELGADO from immigration authorities.

---

[5] "All in violation of Title 8, United States Code, 1324(a)(I)(A)(v)(I) and 1324(a)(I)(B)(i), and Title 18, United States Code, Section 2." (Filing No. 284, at CM/ECF p. 9).

. . .

JUAN PABLO SANCHEZ DELGADO, JOHN C. GOOD, JOHN GLIDDEN, and others known and unknown to the grand jury would provide aliens with housing in order to support their unauthorized employment and to conceal aliens from detection by immigration authorities.

(Filing No. 284, at CM/ECF p. 5).

FABIAN CASTRO, SUNI SARAH! SANCHEZ DELGADO, OSVALDO SANCHEZ DELGADO, MAGDALENA CASTRO BENITEZ, ALMA HERNANDEZ MORENO, JOHN C. GOOD, MAYRA P TIMENEZ, LILIAN ANN, ANTONIO DE JESUS CASTRO, and others known and unknown to the grand jury would agree to warn each other about possible enforcement actions of Immigration and Customs Enforcement agents and officers in order to conceal themselves and aliens and others known and unknown to the grand jury from detection by law enforcement and deportation out of the United States.

(Filing No. 284, at CM/ECF p. 6).

On or about June 21, 2018, JOHN C. GOOD advised JUAN PABLO SANCHEZ DELGADO and MAGDALENA CASTRO BENITEZ of possible ICE presence in the area and advised them to close the La Herradura restaurant if necessary to avoid detection and apprehension by law enforcement.

(Filing No. 284, at CM/ECF p. 8, ¶ 10).

COUNT II - Money Laundering Conspiracy

Between on or about January 1, 2015, and on or about July 17, 2018, in the District of Nebraska and elsewhere,

JUAN PABLO SANCHEZ DELGADO, a/k/a "Pablo,"
ANTONIO DE JESUS CASTRO, a/k/a "Tony"

> MAGDALENA CASTRO BENITEZ, a/k/a "Nena,"
> ALMA HERNANDEZ MORENO, a/k/a "Aunt"
> ANA YANCY CASTRO HERNANDEZ, a/k/a "Anay,"
> JOHN C. GOOD, and
> ARACELY HEREDIA MARTINEZ, a/k/a "Donita,"
> JP AND SONS, LLC,
> J GREEN VALLEY, LLC, and
> CASTRO PROPERTIES, LLC,
>
> defendants herein, did knowingly and willfully conspire and agree together and with each other, and with other persons known and unknown to the grand jury, to commit laundering of monetary instruments by conducting and attempting to conduct financial transactions that in any way or degree affected interstate or foreign commerce with money and property that involved the proceeds of some form of unlawful activity, that is any act relating to harboring certain aliens, and at the time of the financial transactions and attempted financial transactions, the defendants knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of harboring aliens and to avoid transaction reporting requirements and to promote the harboring of aliens.

(Filing No. 284, at CM/ECF p. 10). The superseding indictment alleges that in furtherance of this alleged conspiracy,

> MAGDALENA CASTRO BENITEZ and JUAN PABLO SANCHEZ DELGADO, in part through their company CASTRO PROPERTIES, LLC, would conceal and disguise the true ownership of commercial and real estate assets in the names of others, to include JOHN C. GOOD, ANTONIO CASTRO, and others known and unknown to the grand jury.

(Filing No. 284, at CM/ECF p. 12).

## COUNT VI – Harboring

Between on or about November 15, 2013, to on or about August 8, 2018, in the District of Nebraska, the defendant, JOHN C. GOOD,

knowing and in reckless disregard of the fact that an alien, namely, JUAN PABLO SANCHEZ DELGADO, had come to, entered and remained in the United States in violation of law, did attempt to conceal, harbor, and shield from detection such alien in buildings and other places by means of placing the defendant's name on a deed to a house owned by JUAN PABLO SANCHEZ-DELGADO and MAGDALENA CASTRO-BENITEZ and advising JUAN PABLO SANCHEZ-DELGADO that the police and immigration could not enter the house to arrest JUAN PABLO SANCHEZ-DELGADO because JOHN C. GOOD'S name was on the property so the authorities would have to contact JOHN C. GOOD for permission. In violation of Title 8, United States Code, Section 1324(a)(l)(A)(iii).

([Filing No. 284, at CM/ECF p. 19](#)–20).

## COUNT VII – Harboring

From on or about November 15, 2013, to on or about July 4, 2018, in the District of Nebraska, the defendant, JOHN C. GOOD, knowing and in reckless disregard of the fact that aliens, namely, JUAN PABLO SANCHEZ-DELGADO and MAGDALENA CASTROBENITEZ, had come to, entered and remained in the United States in violation of law, did attempt to conceal, harbor, and shield from detection such alien in buildings and other places by means of placing the defendant's name on a liquor license for a restaurant, that is La Herradura, in fact owned and operated by JUAN PABLO SANCHEZ-DELGADO and MAGDALENA CASTRO-BENITEZ and advising JUAN PABLO SANCHEZ-DELGADO to put a closed sign on the restaurant on or around July 4, 2018 because an immigration raid might be planned for the restaurant on or around that date and JOHN C. GOOD did not want authorities to find MAGDALENA CASTRO-BENITEZ inside the restaurant because the defendant was aware she had been deported once already. In violation of Title 8, United States Code, Section 1324(a)(l)(A)(iii).

([Filing No. 284, at CM/ECF p. 20](#)).

SUMMARY OF FINDINGS

Defendant Good moves to dismiss, claiming 8 U.S.C. §§ 1324(a)(1)(A)(iii) & (v)(I) are unconstitutional as applied, 8 U.S.C. §§ 1324(a)(1)(A)(ii-v) are unconstitutional on their face,[6] and Counts I and II of the superseding indictment fail to allege the essential elements of a crime.

Regarding the as-applied challenge, Counts VI and VII of the superseding indictment charge violations of 8 U.S.C. § 1324(a)(1)(A)(iii). Under § 1324(a)(1)(A)(iii):

> any person who knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, <u>conceals, harbors, or shields from detection</u> . . . such alien in any place, including any building . . . shall be punished as provided in subparagraph (B).

8 U.S.C. § 1324(a)(1)(A)(iii) (emphasis added) (also referred to herein as the "harboring subsection"). Count I alleges Good violated 8 U.S.C. § 1324(a)(1)(A)(v)(I) by engaging in a conspiracy to harbor and conceal illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). The indictment does not allege by language, or even bare statutory citation, any alleged violation of 8 U.S.C. § 1324(a)(1)(A)(i), (ii), or (iv).

---

[6] While Defendant's briefing intermixes the arguments, he attacks §1324 under the First Amendment both as-applied to the instant charges and as facially overbroad. These constitutional challenges are analytically and doctrinally distinct, and they will be addressed separately.

While Good claims the language of § 1324(a)(1)(A)(iii) violates his First Amendment right to free speech as applied, "non-expressive conduct is not afforded First Amendment protection." Baribeau v. City of Minneapolis, 596 F.3d 465, 478 (8th Cir. 2010). Actions to "conceal[], harbor[], or shield[] from detection" an alien lack sufficient communicative elements to bring the First Amendment into play. The harboring subsection of §1324 addresses criminal conduct and not speech, thereby foreclosing any need to further address the as-applied challenge.

But even assuming Defendant's proscribed conduct under the harboring subsection has an incidental effect on speech, thus necessitating intermediate scrutiny, this subsection is content-neutral and constitutional as applied. Laws promoting uniform border enforcement fit squarely within the purview of Congress' constitutional authority. They advance substantial governmental interests, are wholly unrelated to suppression of free expression, and impose no greater than necessary incidental burdens on speech. See U.S. v. O'Brien, 391 U.S. 367, 377 (1968).

Good further challenges the harboring subsection of 8 U.S.C. § 1324 by claiming it impairs his First Amendment right to freely exercise his religious beliefs. Assuming without deciding that prohibiting the harboring and concealment of aliens imposes a substantial burden on Good's sincerely held religious beliefs and the living expression of his Methodist faith, (see Filing No. 338, at CM/ECF p. 33), even under a strict scrutiny analysis, (42 U.S.C. § 2000bb-1(b)), the court concludes: (1) the government has a uniquely compelling interest in the uniform administration and enforcement of border security laws; and (2) 1324(a)(1)(A)(iii) serves as a least restrictive means of furthering that compelling governmental interest. See, U.S. v. Brown, 72 F.3d 134 (8th Cir. 1995) (unpublished).

9

The court further finds that 1324(a)(1)(A)(iii) is neither vague nor does it fail to provide notice of what constitutes criminal conduct. The Eighth Circuit has clearly defined "harboring" within the context of § 1324 to mean "any conduct that 'substantially facilitate[s] an alien's remaining in the United States illegally." U.S. v. Tipton, 518 F.3d 591, 595 (2008). The superseding indictment alleges specific actions Good took to "substantially facilitate" Sanchez-Delgado and Castro Benitez's ability to remain in the United States illegally. Id. Good cannot convincingly argue that the indictment is vague or provides insufficient notice of the crimes charged.

Turning to Defendant's facial attack of § 1324 (a)(1)(A)(ii)–(v), Defendant lacks standing to challenge subsections 1324(a)(1)(A)(ii) and (iv). Good is not facing charges under § 1324(a)(1)(A)(ii) and (iv). The court cannot dismiss an indictment alleging violations of § 1324(a)(1)(A)(iii) because other statutory subsections of § 1324 that are not charged may be unconstitutional. As to § 1324(a)(1)(A)(iii) and (v)(I), Defendant cannot show that these subsections pose a realistic danger of significantly compromising recognized First Amendment protections of parties not before the Court. Regan, 468 U.S. at 704 n. 8. Defendant's facial attack to the constitutionality of § 1324 must therefore fail.

Finally, each of Defendant's arguments for dismissal on 12(b) grounds should be rejected. The allegations against Good sufficiently charge affirmative conduct. Further, the superseding indictment contains the necessary elements of the offenses intended to be charged, sufficiently apprises the defendant of what he must be prepared to meet as to each charge, and alleges adequate information to permit Defendant to plead a conviction or acquittal to bar a subsequent prosecution.

LEGAL ANALYSIS

I.    CONSTITUTIONALITY OF 8 U.S.C. § 1324(a)(1)(A)(iii) AND (v)(I) AS APPLIED TO DEFENDANT.

    A.    First Amendment Challenge.

        *i.    Speech.*

 "Congress shall make no law . . . abridging the freedom of speech." Ashcroft v. Free Speech Coal., 535 U.S. 234, 244 (2002). "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Police Dept. of City of Chicago v. Mosely, 408 U.S. 92, 95 (1972). However, the right to free speech "is not absolute," (Ashcroft, 535 U.S. at 573), and the First Amendment does not prevent restrictions directed at conduct which imposes incidental burdens on speech. Sorrell v. IMS Health, Inc., 564 U.S. 552, 567 (2011).

As an initial matter, Defendant contends that because § 1324(a)(1)(A)(iii) and (v)(I) "criminalize protected expression and associations based on content and identity or status" it "therefore triggers—and fails—strict scrutiny examination." (Filing No. 338, at CM/ECF p. 18). Under the strict-scrutiny framework, a law that burdens a protected right will be upheld only if the government proves the challenged law (1) advances a compelling governmental interest and; (2) is narrowly tailored to serve that interest. Republican Party of Minnesota v. White, 416 F.3d 738, 749 (2005) (internal citations omitted).

In contrast, content-neutral statutes that impose an incidental burden on speech are reviewed under the less rigorous intermediate standard of scrutiny.

"Under intermediate scrutiny, the Government may employ the means of its choosing so long as the . . . regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation, and does not burden substantially more speech than is necessary to further that interest." Turner Broadcasting Sys., Inc. v. F.C.C., 520 U.S. at 180 (internal quotations and citations omitted). "The principle inquiry in determining content neutrality of a law is whether the government passed a law regulating speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

The government contends that Congress passed the harboring subsection of § 1324 under its inherent and fundamental "power to expel or exclude aliens" with no intent to restrict expression. (Filing No. 441) (quoting United States v. Aguilar, 883 F.2d 662, 695 (9th Cir. 1989) (quoting Shaughenssy v. United States ex rel Mezei, 345 U.S. 206, 210 (1953)). The government argues the charged provisions of 8 U.S.C § 1324 serve as a means to regulate the borders which, in turn, serves a significant governmental interest, is narrowly tailored, and leaves "ample alternatives" for a message to be communicated. (Filing No. 441, at CM/ECF p. 13). "The United States has a significant interest in securing its borders for the safety of its citizens and the protection of its economy. It also has a compelling interest and fundamental sovereign right to do so." (Id.) Therefore, the government contends that, at most, the standard of intermediate scrutiny should apply.

The threshold question is whether the proscribed conduct under the harboring subsection of §1324 constitutes or substantially impairs protected speech. "[N]on-expressive conduct is not afforded First Amendment protection." Baribeau v. City of Minneapolis, 596 F.3d 465, 478 (8th Cir. 2010). In deciding whether particular conduct possesses sufficient communicative elements to bring

the First Amendment into play, the court must ask whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." Id. at 404. "The government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." Texas v. Johnson, 491 U.S. 397, 406 (1989).

Defendant cites U.S. v. O'Brien, 391 U.S. 367, 377 (1968) as supporting his claim that the harboring subsection impairs speech. The court finds O'Brien supports the government's argument. In O'Brien, the Court upheld Defendant's conviction for burning his draft card in front of a crowd of onlookers. Id. at 388. Defendant argued that he was exercising his First Amendment right to express his political opposition to U.S. military involvement in the Vietnam War, and that therefore his "symbolic speech" was constitutionally protected. Id. at 376. The Court nevertheless found that the challenged statute's purpose—to criminalize the conduct of the destruction of draft cards—was unrelated to the suppression of free expression, reasoning:

> We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

Id. at 377. When prohibited conduct is also deemed expressive, governmental regulation is sufficiently justified if "it is within the constitutional power of the

13

Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to further that interest. (Id.)

Here, the parties' First Amendment speech dispute hinges on whether § 1324(a)(1)(A)(iii)'s prohibition of "conceal[ing], harbor[ing], or shield[ing] from detection" an illegal alien in the United States in violation of immigration laws connotes an unlawful infringement on protected speech. 18 U.S.C. § 1324(a)(1)(A)(iii). Given the concealed nature of the conduct with which Defendant is charged, it is implausible Defendant fostered "the intent to convey a particularized message," (Baribeau, 596 F.3d at 478), and even less plausible "the likelihood was great that the message would be understood by those who viewed it." Id.  The court finds Good's alleged acts of harboring and concealing aliens in violation of 1324(a)(1)(A)(iii) was neither speech nor expressive conduct sufficient to warrant First Amendment protection.

But even assuming the harboring subsection imposes an incidental burden on speech, applying intermediate scrutiny, § 1324(a)(1)(A)(iii) should be upheld. First, it is well within the constitutional power of the Government to administer and enforce border security laws. Fiallo v. Bell, 430 U.S. 787, 792 (1977) ("[I]t is important to underscore the limited scope of judicial inquiry into immigration legislation."). Second, uniform application and enforcement of border security laws are fundamental and sovereign attributes of our government. Id. Third, the government's interest in enforcing uniform border security laws is wholly unrelated to suppression of the free exchange of ideas and expression. Finally, even assuming § 1324(a)(1)(A)(iii) impairs speech or expressive conduct, it does not

14

burden substantially more speech than is necessary to further immigration legislation. See Turner Broadcasting Sys., Inc., 520 U.S. at 180.

Good has raised no valid freedom of speech challenge to § 1324(a)(1)(A)(iii), and the statutory provision should be found constitutional as applied to Defendant. Nevertheless, Defendant argues 8 U.S.C. § 1324(a)(1)(A)(ii)–v(l)) abridge his freedom of speech and cites, in broad strokes, the Ninth Circuit's recent United States v. Sineneng-Smith decision in support of his argument. In Sineneng-Smith, the Ninth Circuit invalidated §1324(a)(1)(A)(iv) (under which Defendant is not charged). Defendant offers little by way of substance as to why the Sineneng-Smith court's reasoning should apply to the instant matter, vaguely contending that Subsections (ii) (iii) and (v) must fail "[f]or the same analytical reasons." (Filing No. 338, at CM/ECF p. 23).

The court is unconvinced. As applied, the Sineneng-Smith decision is inapplicable to Good's charges. Unlike the defendant in Sineneng-Smith, Good is not charged with encouraging or inducing an alien to come to, enter, or reside in the United States in violation of 8 U.S.C. §1324(a)(1)(A)(iv). Rather, Good's charges under §1324 implicate the proscribed criminal conduct of harboring and concealing aliens. As acknowledged in Sineneng-Smith, subsections (i)-(iii) prohibit conduct, whereas subsection (iv) targets speech. Sineneng-Smith, 910 f.3d at 474–75.

For the foregoing reasons, the court finds Good's as-applied challenge to the superseding indictment as impairing his First Amendment right to freedom of speech should be denied.

4:18-cr-03088-JMG-CRZ    Doc # 503    Filed: 04/03/19    Page 16 of 33 - Page ID # 1761

*ii.    Association.*

Defendant further argues that § 1324's harboring subsection violates his rights to freedom of association guaranteed under the First Amendment. Good claims prohibiting the harboring and concealment of aliens curtails his ability to "to associate with persons in his community who want to build the community, start new businesses, established [sic] homes, have children, support the local schools, and extend the life of the community." (Filing No. 338, at CM/ECF p. 27). Defendant claims that subsection (iii) is at odds with the Supreme Court's holding in Holder v. Humanitarian Law Project, 561 U.S 1, 16 (2010).

The reasoning in Holder does not support Good's argument. Holder interpreted 18 U.S.C. § 2339B to proscribe a person's right to provide material support to a designated foreign terrorist group. Holder held that prohibiting such conduct under 18 U.S.C. § 2339(B) does not violate freedom of association rights because the statute punishes support of, and not just association with, designated groups. (Id.).

Like 18 U.S.C. § 2339B, §1324(a)(1)(A)(iii) proscribes conduct that substantially facilitates an alien's, or group of aliens', ability to remain in the U.S. illegally. It does not prohibit associating and conversing with illegal aliens. Subsection (iii) does not foreclose Good's ability to "associate with persons in his community who want to build the community, start new businesses, establish[] homes," etc. Rather, it prohibits Good's alleged acts of helping illegal aliens to remain hidden in this country and therefore undetected by the government.

iii.    *Free Exercise of Religion.*

A person claiming that a governmental law violates his right to exercise his religion freely must establish that the action "substantially burdens his sincerely held religious belief." Weir v. Nix, 114 F.3d 817, 820 (8th Cir.1997). Substantially burdening the free exercise of religion means that the law "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunity to engage in those activities that are fundamental to a person's religion." Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir.2008) (quoting Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 988 (8th Cir.2004)).

The Religious Freedom Restoration Act (RFRA), was enacted in 1993 to amend "all federal laws, including criminal laws, to include a statutory exemption from any requirement that substantially burdens a person's exercise of religion unless that requirement is the least restrictive means to achieve a compelling government interest." United States v. Ali, 682 F.3d 705, 709 (8th Cir. 2012). "In a RFRA analysis, a rule imposes a substantial burden on the free exercise of religion if it prohibits a practice that is both sincerely held by and rooted in the religious beliefs of the party asserting the claim or defense." United States v. Anderson, 854 F.3d 1033, 1035 (2017) (citations omitted).   See also, Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 424 (2006) (quoting 42 U.S.C. § 2000bb-1(a)). "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 430–31 (2017).

17

For the purposes of this motion to dismiss, the court assumes without deciding that the harboring subsection of 8 U.S.C. § 1324 prohibits and thereby imposes a substantial burden on a practice that is both sincerely held by and rooted in the religious beliefs held by Good. That is, the court assumes Good's alleged acts of concealing, harboring, or shielding illegal aliens from detection were undertaken in "living expression" of sincerely held religious convictions as espoused by "The United Methodist Church, a Christian denomination." (See Filing No. 338, at CM/ECF p. 33). With these assumptions in mind, the court must determine whether § 1324(a)(1)(A)(iii)'s prohibitions (1) further a compelling governmental interest and (2) were the least restrictive means of furthering that compelling governmental interest. Anderson, 854 F.3d at 1035 (citing Ali, 682 F.3d at 708; 42 U.S.C. § 2000bb-1(b)).

"[A] significant body of Supreme Court law has explained that legislation, religiously neutral on its face, may regulate the health, safety, and general welfare of the public, or certain activities within the purview of the federal government, even if individuals will thereby be penalized because the practice of their religious doctrine violates the law." United States v. Merkt, 794 F.2d 950, 954 (5th Cir. 1986) (providing an extensive listing of supporting case law). Applying strict scrutiny, Merkt reasoned that "there is a compelling state interest in the government's uniform enforcement of border control laws":

> We cannot engraft judicial exceptions to the illegality of transporting undocumented El Salvadorans without thereby de facto revising, for the unique benefit of El Salvadorans, the legal conditions under which they may abide in this country. This result would create a preference utterly at odds with the fine balancing of national-origin quotas, visa preference tables, and alien residency requirements promulgated and enforced pursuant to the Immigration and Nationality Act of 1952, as

18

amended, 8 U.S.C. §§ 1101–1524 *passim.* The interest in uniform application of a facially neutral criminal law is acute: "To encourage individuals to make their own determinations as to which laws they will obey and which they will permit themselves as a matter of conscience to disobey is to invite chaos."

794 F.2d at 955.

Defendant argues that as a practical matter and based on geography, the court should construe the government's compelling interest in this case as distinguishable from other portions of the country. Specifically, Defendant argues:

In this case the troubling language of 8 U.S.C. § 1324 (a)(1)(A)(iii) reaches the good deeds, stalwart citizenship, and selflessness that allows life in a community to go on through churches, charities, and good people meeting the needs of those in need . . . And, all this could have taken place 600 miles from the northern border and 1100 miles from the southern border of the United States, in north central Nebraska. Holt County is not a hot bed point of illegal entry into the U.S.

 (Filing No. 338, at CM/ECF p. 22). The government disagrees, arguing Nebraska shares the same compelling interest as the rest of the country in supporting the fundamental sovereign need to uniformly enforce U.S. border security laws. (Filing No. 441, at CM/ECF p. 26).

The government undoubtedly has a compelling interest in the uniform administration and enforcement of its laws securing the border. Arizona v. U.S. 567 U.S. 387, 394 (2012) ("The Government of the United States has broad, undoubted power over the subject of immigration . . .  This authority rests, in part, on the National Government's constitutional power to 'establish a uniform Rule of Naturalization' and its inherent power as sovereign to control and conduct relations with foreign nations.")(quoting U.S. CONST. art. 1, § 8, cl. 4.). This need must be addressed by not only the border states where aliens enter, but also their states of

destination—in this case, Nebraska. A piecemeal application and enforcement of the country's border security laws based on geography would wholly undermine uniform administration and application of federal law.

Having determined that 8 U.S.C. § 1324 furthers a compelling interest, the court must determine whether the statute provides the least restrictive means of furthering that compelling governmental interest. Here, Defendant has not suggested and the court cannot envision a less restrictive alternative that would exempt harboring and concealment violations of § 1324 from prosecution on religious grounds. A judicially created religious exemption to the uniform application and enforcement of border security laws would fatally undermine the alien residency requirements promulgated and enforced pursuant to the Immigration and Nationality Act of 1952, and thereby usurp the separation of authority as it was constitutionally intended.

Even under the most exacting scrutiny, Defendant's free exercise of religion claim fails. See e.g., U.S. v. Brown, 72 F.3d 134 (8th Cir. 1995) (unpublished) (citing Merkt and holding that neither the First Amendment nor RFRA provide a legal defense against Defendant's argument that his church produced and distributed marijuana and peyote to the sick; "the government could not have tailored the restriction to accommodate Our Church and still protected against the kinds of misuses it sought to prevent."). See also, American Friends Service Committee Corp. v. Thornburgh, 961 F.2d 1405 (9th Cir. 1991) (holding Employer sanction provisions of Immigration Reform and Control Act (IRCA) were not directed at religious belief or the exercise of religion and did not violate free exercise clause as applied to a Quaker organization whose beliefs required it and its members not to refuse human beings work merely because they were strangers in the United States).

20

## B. Fifth Amendment Guarantee of Due Process of Law.

### i. *Vagueness.*

Good next argues that certain statutory terms under 8 U.S.C § 1324 are insufficiently clear to satisfy the due process requirement of the Fifth Amendment. (Filing No. 338, at CM/ECF p. 39). As to the statutory terms: "inciting",[7] "encouraging", and "harbor", (Filing No. 338, at CM/ECF p. 39, ¶ 100), Defendant argues:

> Mr. Good is charged under a statute so broad that providing an account, or selling a house on installment payments and holding title, or getting a valid liquor license from a state authority to go into business with a local husband-and-wife of long-standing ties to the community, purportedly constitute criminal offenses.

(Filing No. 338, at CM/ECF p. 38).

The Fifth Amendment provides that "no person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The Government violates this guarantee by taking away someone's "life, liberty, or property" under a criminal law so vague that it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Holder, 561 U.S. at 16 (quoting United States v. Williams, 553 U.S. 285, 304 (2008). See also, Johnson v. U.S., 135 S. Ct. 2551, 2556 (2015).

"When a statute 'interferes with the right of free speech or of association, a more stringent vagueness test should apply.'" Holder, 561 U.S. at 19 (quoting

---

[7] The word "incite" (or any variation of that word) does not appear in 8 U.S.C.A. § 1324. Perhaps Defendant meant "inducing" rather than "inciting," but the indictment against Good does not allege that Good "encouraged" or "induced" an alien to come to, enter, or reside in the United States in violation of 18 U.S.C. §1324(a)(1)(A)(iv).

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982)). However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Powell v. Ryan, 855 F.3d 899, 903 (8th Cir. 2017) (citing U.S. v. Williams, 533 U.S. 285, 304 (2008) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989). "Words inevitably contain germs of uncertainty." Broadrick v. Oklahoma, 413 U.S. 601, 608 (1973). Courts must "consider whether a statute is vague as applied to the particular set of facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" Holder, 561 U.S. at 18 (quoting Hoffman, 455 U.S. at 495. "That rule makes no exception for conduct in the form of speech." Holder, 561 U.S. at 20.

A person of ordinary intelligence in Good's position is on fair notice that his alleged conduct was proscribed by 8 U.S.C. § 1324. The superseding indictment alleges Good knew Sanchez-Delgado and Castro Benitez were unlawful aliens when he acted to harbor and conceal them from law enforcement detection. (See Filing No. 442-2). Nevertheless, Defendant argues that Section 1324 suffers from "vagueness and uncertainty" because it leaves the decision of what constitutes illegal harboring, to "policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Filing No. 338, at CM/ECF p. 39).

Contrary to Good's argument, the Eighth Circuit has clearly defined "harboring" within the context of Section 1324 to mean "any conduct that substantially facilitates an alien's remaining in the United States illegally." U.S. v. Tipton, 518 F.3d 591, 595 (2008) (internal quotation omitted). The superseding indictment charges Good with conduct that "substantially facilitate[d] Sanchez-Delgado and Castro Benitez's remaining in the United States illegally." Id. Good

is charged with having "provided a residence to harbor" Delgado and with allowing Delgado and Benitez "to conceal commercial assets and businesses in his name, to include "la Herradura," a restaurant in O'Neill, Nebraska, that is operated and staffed by . . . Delgado, and which . . . Benitez, [sic] assisted in managing and operating." (Filing No. 284, at CM/ECF p. 5).

> In support of his vagueness claim, Good argues:

> [He] went before a City Council and a Liquor Commission to obtain a liquor license, obtained a health permit, opened a restaurant, and placed management authority and responsibility in a hard-working, young, well-known married couple in the community. Neb Rev Stat §§ 53-122, et seq., the Nebraska Liquor Control Act. How was he to know that conduct could amount to a felony under 8 U.S.C. § 1324? When Mr. Good sold a house on installment payments and held the title – something done thousands of times in Nebraska and once one of the most common ways to sell real estate – how was he to know from the language of the challenged statute that his conduct was criminal in nature?

(Filing No. 338, at CM/ECF p. 42).  But the indictment in this case not only alleges Good's actions, but further alleges Good, "knowing and in reckless disregard of the fact that . . . Juan Pablo Sanchez-Delgado and Magdalena Castro Benitez" were aliens, performed the charged conduct "for the purpose of" concealing illegal aliens "to avoid detection and apprehension by law enforcement," and to "shield" them from being found by immigration authorities. The government bears the burden of proving the requisite *mens rea*, but with the alleged basis for that element in the indictment, Good is not entitled to dismissal merely by claiming he did not know his conduct was illegal. That is an issue for the jury.

A statute is not vague merely because its "outermost boundaries" are imprecise.

> [T]here are limitations in the English language with respect to being both specific and manageably brief, and . . . although the [statutory] prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest."

Broadrick, 413 U.S. at 608. Here, §1324's prohibition against harboring and concealing aliens is clearly not vague as applied to the facts at issue, and the court need not further address the claims of vagueness in violation of the Fifth Amendment's Due Process Clause. Holder, 561 U.S. at 18 ('[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'").

ii.   Notice of what constitutes criminal conduct.

Defendant argues that the harboring subsection of § 1324 impermissibly fails to impart notice of what constitutes criminal conduct under its terms. Specifically, Defendant argues that "[t]he 'harboring' charge has become a catch all offense that can be attached to incriminate nearly anyone when the Justice Department decides . . . . The Superseding Indictment reveals that Mr. Good was not involved with the crux of the abuse: underpaying undocumented labor and not paying federal income tax." (Filing No. 338, at CM/ECF p. 41).

The pertinent inquiry under § 1324(a)(1)(A)(iii) is not whether Good was "involved with the crux of the abuse" but whether the defendant's *conduct* "substantially facilitate[d] an alien's remaining in the United States illegally." U.S. v. Tipton, 518 F.3d 591, 595 (8th Cir. 2008). As discussed supra, § 1324(a)(1)(A)(iii) provides sufficient notice of what constitutes criminal conduct under its terms.

24

For all the foregoing reasons, the court should find that § 1324(a)(1)(A)(iii) is constitutional as applied to Good. As such, Counts VI and VII, which allege violations of §1324(a)(1)(A)(iii), Count I which alleges Good conspired with others to violate §1324(a)(1)(A)(iii), and Count II which alleges Good laundered money obtained from violating §1324(a)(1)(A)(iii), should not be dismissed based on Good's as applied constitutional challenge.

II.    FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF 8 U.S.C. § 1324.

A.    First Amendment Overbreadth challenge.

i.    *Standing.*

Good purports to challenge § 1324(a)(1)(A)(ii)–(v) as overbroad, but as stated in the indictment, he is charged with harboring and concealing aliens in violation of § 1324(a)(1)(A)(iii), conspiring to do so in violation of §1324(a)(1)(A)(v), and laundering the money obtained through this unlawful conduct. Good's brief does not address how he has standing to raise a facial challenge to § 1324(a)(1)(A)(ii) and (iv)—statutory language not cited or implicated by the allegations of the indictment. A defendant lacks standing to challenge the constitutionality of a statute that does not provide the basis for his prosecution. United States v. Muick, 167 F.3d 1162, 1166–67 (7th Cir. 1999) (holding a defendant convicted under 18 U.S.C. § 2252(a)(2) lacked standing to challenge the constitutionality of 18 U.S.C. § 2252A or amendments to § 2256: "The term 'child pornography' does not appear in § 2252(a), and any potential vagueness or overbreadth of this term is irrelevant to [Defendant's] conviction.").

Moreover, Good's pending motion seeks dismissal of the superseding indictment. Even assuming § 1324(a)(1)(A)(ii) and (iv) are unconstitutional, that finding cannot mandate dismissal of a grand jury's indictment for violations of § 1324(a)(1)(A)(iii) and (v)(I).[8] While the defendant may be able to argue *jus tertii* standing to challenge and enjoin enforcement of 1324(a)(1)(A)(ii) and (iv) in a civil action,[9] the court cannot afford injunctive relief on behalf of the defendant and others in response to a motion to dismiss an indictment.

The undersigned magistrate judge will therefore discuss Good's facial challenge to § 1324(a)(1)(A)(iii) and the conspiracy to violate that subsection as prohibited under §1324(a)(1)(A)(v)(I).

    *ii.*    Overbreadth.

Good moves this court to invalidate 8 U.S.C. § 1324 (a)(1)(A)(iii) and (v)(I) on First Amendment overbreadth grounds, arguing these statutory provisions are "a catchall that is so vague it defies understanding, so broad it chills mainstream religious exercise, and so vague that it encourages arbitrary and discriminatory enforcement." (Filing No. 338, at CM/ECF p. 22–24). Good argues the statute is unconstitutional based on its following potential third-party applications:

_____

[8] A criminal defendant to whom a statute may constitutionally be applied may under certain First Amendment circumstances challenge that statute on the ground it is overly broad. See, e.g., United States v. Scruggs, 714 F.3d 258 (5th Cir. 2013); United States v. Martinez, 736 F.3d 981 (11th Cir. 2013); City of Chicago v. Morales, 527 U.S. 41 (1999); United States v. Stevens, 559 U.S. 460 (2010).

[9] In the civil context, a federal court may grant injunctive relief pursuant to the First Amendment overbreadth doctrine where there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court." Snider v. City of Cape Girardeau, 752 F.3d 1149 (8th Cir. 2014). See also, Ways v. City of Lincoln, Neb., 274 F.3d 514 (8th Cir. 2001); Board of Airport Comm. of the City of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569 (1987);

> Encouraging a needy traveler to pull off the road and sleep before going on; or giving someone in need a hand by paying for the frazzled traveler's tank of gas and buying a cup of coffee for the driver; or encouraging someone to stay in a church's emergency guest quarters; or speaking with a friend to locate a place for a person in need of lodging; all without conducting a cross-examination on the issue of lawful presence in the United States.
>
> . . .
>
> Modern lawyers and other professionals who work with immigrants will suffer chilled speech on account of § 1324's Subsection's (ii)–(v)'s overbreadth. The attorney who tells her client that she should remain in the country while contesting removal because, for example, non-citizens within the United States have greater due process rights than non-citizens outside the United States, or because, as a practical matter, the government may not physically remove her until removal proceedings are completed.
> . . .
>
> And, what about a teacher, Village Board Chairman, preacher, or law enforcement officer, who lends a hand to an unknown traveler with no English skills but has a flat tire, an empty gas tank, a need to use a restroom, or help with directions?

(Filing No. 338, at CM/ECF p. 22–23).

### 1. Subsection (iii).

Good has the burden "to demonstrate a realistic danger that the [statute] will significantly compromise recognized First Amendment protections of parties not before the Court." Regan v. Time, Inc., 468 U.S. 641, 704 n. 8 (1984). Subsection (iii) reads:

> Any person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or

attempts to conceal, harbor, or shield from detection, such alien in any
place, including any building or any means of transportation . . . shall
be punished as provided in subparagraph (B).

8 U.S.C. § 1324(a)(1)(A)(iii). Good offers no argument on how subsection (iii)'s
"conceals" or "shields from detection" language poses any realistic threat under
the overbreadth analysis. Rather, Defendant's sole argument is that the statute
"places no limit on 'harboring," and this opinion will address only that argument.

Contrary to Good's claim, the Eighth Circuit has explicitly defined "harboring"
within the meaning of subsection (iii) as "any conduct that 'substantially facilitate[s]
an alien's remaining in the United States illegally.'" U.S. v. Tipton, 518 F.3d 591,
595 (8th Cir. 2008) (citing R. Doc. 52, Jury Instruction 14; United States v. Rubio-
Gonzalez, 674 F.2d 1067, 1073 (5th Cir. 1982). So, to violate the harboring
component of subsection (iii), a defendant must knowingly or in reckless disregard
of the fact that an alien has come to, entered, or remains in the U.S. in violation of
the law, engage in any conduct that substantially facilitates an alien's, or group of
aliens' ability to remain in the U.S. illegally.

Any speech included within the sweep of subsection (iii) is incidental to
defendant's criminal conduct. As explained above, any incidental burden on
speech arising from the enforcement of § 1324(a)(1)(A)(iii) furthers the
government's interest in uniformly administering and enforcing border security
laws, a fundamental responsibility of the federal government that is for a purpose
wholly unrelated to suppressing free expression. Any burden on speech arising
from § 1324(a)(1)(A)(iii) does not exceed what is necessary to further the purpose
of immigration legislation. Defendant has therefore failed to demonstrate that the
harboring subsection of § 1324 imposes a burden on speech that violates the First
Amendment.

### 2. *Subsection (v).*

Finally, although Defendant cursorily argues that subsection (v), too, constitutionally suffers under the overbreadth analysis, he presents no argument in support of this theory independent of his claims that § 1324(a)(1)(A)(ii)–(iv) are unconstitutional.

Defendant has not met his burden "to demonstrate a realistic danger that [8 U.S.C. § 1324 (a)(1)(A)(iii) and (v)(I)] will significantly compromise recognized First Amendment protections of parties not before the Court." Regan, 468 U.S. at 704 n. 8. Defendant's facial challenge to these statutory subsections should be denied.

## III.   FAILURE TO STATE AN OFFENSE

An indictment is sufficient if it contains the elements of the offense intended to be charged, sufficiently apprises the defendant of what he must be prepared to meet, and alleges adequate information to permit a defendant to plead a conviction or acquittal to bar a subsequent prosecution. United States v. Debrow, 346 U.S. 374, 376 (1953); United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993). "In determining whether an Indictment has sufficiently set forth the elements of the charge, the Indictment will generally be deemed sufficient 'unless no reasonable construction can be said to charge the offense.'" United States v. Hughson, 488 F. Supp. 2d 835, 840-41 (D. Minn. 2007) (quoting United States v. Peterson, 867 F.2d 1110, 1114 (8th Cir. 1989)).

### A. 12(b) argument for dismissal on all counts.

Defendant argues for dismissal of all counts insofar as the proscribed activity, or conspiracy or aiding and abetting in pursuit thereof, is fruit of a

29

constitutionally-invalid statute. Defendant contends that all offenses charged against Mr. Good under these statutes depend on the validity of 8 U.S.C. § 1324, and the statute is invalid. Further, Defendant argues that:

> There are not sufficient allegations in the superseding Indictment against Mr. Good suggesting that any of his actions constituted more than the exercise of his First Amendment rights to be helpful [sic] the people who needed help.

(Filing No. 338, at CM/ECF p. 44).

Having rejected each of Defendant's constitutional challenges to the conduct proscribed by § 1324, the court should not dismiss the charges under Rule 12(b) on the basis of unconstitutionality.

## B. 12(b) argument for failure to plead specificity as to Count II.

Good argues that "to state a crime with sufficient specificity to survive a motion to dismiss, the Indictment must charge affirmative conduct against the Defendant." (Filing No. 338, at CM/ECF p. 46). Defendant contends that "Count II does not do so against Mr. Good" and "should be dismissed on this basis." (Id.)

Count II charges that Good and others "did knowingly and willfully conspire" . . . "to commit laundering of monetary instruments by conducting and attempting to conduct financial transactions . . . involv[ing] the proceeds of . . . harboring certain aliens, and at the time of the financial transactions and attempted financial transactions, the defendants knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of harboring aliens and to avoid transaction reporting requirements and to promote the harboring of aliens." (Filing No. 284, at CM/ECF p. 10). Specifically as to Good, the superseding indictment charges that Benitez and Delgado, "in part

30

through their company Castro Properties, LLC, would conceal and disguise the true ownership of commercial and real estate assets in the names of others to include . . . Good" in violation of 18 U.S.C. § 1956(h) and Section 2. (Filing No. 284, at CM/ECF p. 12).

The court finds that the allegations against Good sufficiently charge affirmative conduct against Defendant. The superseding indictment puts Good on notice that he is charged with willfully conspiring and agreeing to commit the laundering of monetary instruments by acting to "conceal and disguise the true ownership of commercial and real estate assets" in Good's name. (Id.).

Further, the court finds that Count II sufficiently states the relevant elements of a money laundering conspiracy: "(1) that the defendant conducted a financial transaction which involved the proceeds of an unlawful activity; (2) that he knew that the property involved in the transaction was proceeds of some form of specified unlawful activity; and (3) that he intended to promote the specified unlawful activity." U.S. v. Williams, 87 F.3d 249, 254–55 (1996). The court should deny Good's motion to dismiss Count II for failure to state the essential elements of a crime.

### C. 12(b) Argument for dismissal of conspiracy charges.

Lastly, Defendant urges the court to dismiss on grounds "separate from all those above" the charge of conspiracy under § 1324(a)(1)(A)(v)(I), arguing that

> [§ 1324(a)(1)(A)(v)(I)] . . . seeks to punish the conduct of a person who somehow assists an illegal alien(s), *not the conduct of the illegal alien(s) himself*. An illegal alien cannot "harbor, conceal, or shield himself from detection." It logically follows

31

that, under the statute at issue, a person cannot be guilty of
aiding and abetting the conduct of the illegal alien(s) either. This
is the Government's theory and it must fail.

([Filing No. 338, at CM/ECF p. 44](#)–45) (internal quotation and citations omitted).

Contrary to Good's argument, the language of the superseding indictment states that Good conspired with third persons, charging that Defendant:

did knowingly and willfully conspire and agree *together and with each other, and with other persons known and unknown to the grand jury*, to commit harboring and concealment of aliens . . . .

([Filing No. 284, at CM/ECF p. 2](#)) (emphasis added). The government's evidence may show that Good conspired with aliens, but the conspiracy charge alleges he conspired with others as well to conceal the aliens from government detection. Count I alleges the essential elements of the crime defined under § 1324(a)(1)(A)(v)(I). Defendant's argument for dismissal of the Count I conspiracy charge should be denied.

CONCLUSION

Defendant has failed to raise a valid facial or as-applied constitutional challenge to the statutory provisions underlying the indictment against Good. Having determined the superseding indictment alleges the necessary elements of the offenses charged, the court finds Defendant's motion to dismiss should be denied.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerard, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b), that Defendant's motion to dismiss (Filing No. 335) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 3rd day of April, 2019.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge